**In re Multidistrict Commodity Credit Corporation Litigation Involving GRAIN SHIPMENTS.**

*United States of America v. Southern Railway Company,* District of South Carolina. Civil Action No. 67–843.

*United States of America v. Southern Railway Company,* District of South Carolina. Civil Action No. 68–635.

**No. 22.**

Judicial Panel on Multidistrict Litigation.

March 18, 1971.

## OPINION AND ORDER

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD,* EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL,* Judges of the Panel.

PER CURIAM.

When the first of these actions as transferred to the District of Kansas for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407, the two actions involving the Southern Railway Company were not transferred because we had been advised that discovery was virtually complete and that these actions would be tried in the very near future.[1] In re Grain Shipments, 300 F.Supp. 1402, 1405 (Jud.Pan.Mult.Lit. 1969).

On November 3, 1970, a pretrial conference was held in the District of South Carolina in these two cases during which the government moved for a continuance beyond the present term of court to permit it to take additional discovery. Southern opposed the continuance and the additional discovery. In its order of November 13, 1970 the district court found that the cases were not ready for trial and that there was considerable discovery remaining.

The government then filed a motion with the Panel to transfer these two cases to the District of Kansas for coordi-

---

* Although Judges Weinfeld and Weigel were not present at the hearing they have, with the consent of all parties, participated in this decision.

1. In its brief filed on May 14, 1969, Southern's counsel stated that these two cases would "be ready for trial at the next term of court." Almost two years have now passed without these cases having been tried although the defendant continues to maintain that it is ready for trial even if the government is not.

nated or consolidated pretrial proceedings with the other cases transferred to that court under § 1407. The Southern opposed the transfer and a hearing was held in Washington, D. C. on February 26, 1971 to consider this matter.

The sole reason for excluding these two cases from the original transfer was the belief that there was little, if any, discovery remaining and that no benefit would therefore accrue to either party from coordinated or consolidated pretrial proceeding. Although the Southern maintains that it is ready for trial and suggests that the government really has no further need for discovery, the district court found that there was "considerable discovery to be done." We must therefore conclude that the premise which underlay our original decision to exclude these cases from the transfer to Kansas was factually incorrect.

The defendant now contends that there are few if any important questions of fact in these two cases common to those in actions transferred to Kansas. We do not fully understand the Southern's position with regard to its principal defense for it seems to contend that the weight certificates are "self impeaching" and *conclusively* show that there was no actual loss [2] of grain during shipment of the grain in question even though it intends to use expert witnesses to establish the integrity of the covered hopper car, and to point out possible defects in the design and use of its closing and sealing mechanisms (and other factors) which *could* have caused

the discrepancy in origin and destination weight certificates.[3] Many of these "factors" have previously been found to be common to all of the cases. In re Grain Shipments, *supra,* see also 319 F. Supp. 533 (Jud.Pan.Mult.Lit. 1970) and 304 F.Supp. 457 (Jud.Pan.Mult.Lit. 1969). In addition, we must give great weight to the district court's finding "that the considerable discovery remaining to be done in (these two cases) is the same in many instances as the discovery in the Multidistrict cases." (Order of November 13, 1970)

We are satisfied from the facts *now* presented to us that these two cases are not ready for trial, that they involve many complex questions of fact common to those in actions previously transferred to the District of Kansas, that substantial discovery as to these common questions of fact remains to be done and that the convenience of parties and witnesses and the just and efficient conduct of this litigation will be served by the transfer of these cases to the District of Kansas for coordinated or consolidated pretrial proceedings under § 1407.

We note that the question of the *integrity* of a clear record hopper car—that is whether one *can* lose grain during shipment is still unresolved. We understood that this was a "threshold question" which could conceivably dispose of the entire litigation. If this matter cannot properly be resolved by partial summary judgment under Rule 56 then it certainly can be the subject of a separate trial under Rule 42(b).[4] Counsel

2. For example, the defendant points out in its brief, that the records for one car which made nine consecutive trips showed an apparent loss of grain on six of the trips and an apparent gain of weight on the other three, with an apparent *net gain* of 1,320 pounds of grain for the nine trips.

3. Defendants' expert witnesses "will describe to the court at least eleven factors that can cause a discrepancy between the weight certificate at origin and the weight certificate at destination: (1) malfunction of scale at origin; (2) error by weighmaster at origin; (3) dust and chaff blowing away during loading; (4) spillage during loading; (5) failure to

put all of the grain into the right car; (6) loss of moisture and "natural" weight loss during loading, enroute, and during unloading; (7) failure to completely unload car at destination; (8) spillage during unloading; (9) dust and chaff blowing away during unloading; (10) malfunction of scale at destination, and (11) error by weighmaster at destination." Southern's Brief in Opposition to Motion to Transfer, page 13 (December 22, 1970)

4. A separate trial could be held on this issue in one or more of the actions originally commenced in the District of Kansas and, by stipulation, the result of that

for the defendant advises us that he has been informed that deposition program in these cases could cost between $200,000 and $500,000, a sum far in excess of the damages in these cases. We can only reemphasize that "every effort should be made by the parties and the courts to process these actions as efficiently, expeditiously and economically as possible." In re Grain Shipments *supra,* 300 F.Supp. at 1404.

It is therefore ordered that the above actions be and the same are hereby transferred to the District of Kansas for co-ordinated or consolidated pretrial proceedings and with the prior consent of that court they are hereby assigned to the Honorable George C. Templer.

trial could be made binding on the parties in the other cases. Such a procedure has been used with great success in the *Butterfield Patent Cases.* In an effort to resolve this question, it might be appropriate for the court to consider appointing its own expert witness. Manual for Complex and Multidistrict Litigation, § 3.51 (Part 2).