463 F.2d 967
 SOUTHERN RAILWAY COMPANY, Defendant-Petitioner,
v.
Honorable George C. TEMPLAR, United States District Judge,
Respondent, and United States of America,
Plaintiff-Respondent.
 No. 72-1082.
 United States Court of Appeals,
 Tenth Circuit.
 July 17, 1972.
 
 Roberts B. Owen, Washington, D. C. (William D. Iverson, of Covington & Burling, and Duncan B. Phillips, Washington, D. C., of counsel, with him on the brief), for petitioner.
 Ronald R. Glancz, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, with him on the brief), for respondent.
 Before SETH, HOLLOWAY and DOYLE, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 The Government, for the Commodity Credit Corporation, filed in South Carolina two suits against the Southern Railway Company in December 1967 and July 1968. These cases were among the fifty or fifty-five cases filed in different parts of the country against various railroads raising similar issues. The defendants are railroad carriers of grain owned by the Commodity Credit Corporation. The grain was moved from a grain storage elevator to another elevator in a different part of the country. The complaints asserted that in particular shipments the weight certificates from the loading elevator showed that more grain was loaded into a particular car than was unloaded at the destination elevator according to its weight certificate. It is asserted that the value of the grain involved in a particular shipment is not great, but the principle to be established is of importance to grain carriers in the future. The defenses or explanations as to the weight differences concern weighing methods, spillage of grain, natural shrinkage, mistakes in weighing, and related issues.
 
 
 2
 The Southern Railway Company here seeks a writ of mandamus under 28 U.S.C. Sec. 1651 and under Rule 21 of Federal Rules of Appellate Procedure, directing the trial judge in the District of Kansas to vacate as to it a certain pretrial order which imposes sanctions against it and all the defendants in the other cases.
 
 
 3
 These two cases were transferred to the Kansas trial judge some time after about fifty other cases had been previously transferred for coordinated pretrial procedure under 28 U.S.C. Sec. 1407.
 
 
 4
 Some description of the history of these two cases is necessary. In its Brief Southern asserts that while the cases were pending in South Carolina it reached the conclusion that it was not necessary for it to take any depositions because it was going to rely for its defense on the inconsistencies shown on the face of the weight certificates. It did however propound interrogatories to establish the relationship of the Commodity Credit Corporation and the elevator operators. This, it asserts, completed its discovery and it was then ready for trial. In October 1969 the cases were set for trial for a term beginning March 10, 1970. The Government, shortly before trial date, however, asked for a postponement because it needed additional time for discovery. Southern opposed the Government's request but it was granted. See In Re Grain Shipments, 325 F.Supp. 318. The Government thereafter filed requests for admissions; these were answered. The Government in August asked for more time for discovery and later made an additional request for admissions relating to the admissibility of the weight certificates. Southern, after some delay, admitted that the certificates would be admissible as business records, but it would not concede their accuracy. Southern, upon the South Carolina court's order, provided the Government with a list of witnesses it would call and a summary of their testimony.
 
 
 5
 In December 1970 the Government asked the Panel on Multi-District Litigation to transfer the Southern cases to Kansas, apparently so that discovery could be pursued with the other cases there pending. The transfer was made on March 18, 1971. In the opinion on transfer, 325 F.Supp. 318, 319, the Panel noted Southern's position that it was ready for trial, and noted the trial court's position that "considerable discovery remain[s] to be done." It would appear that the discovery remaining was that to be done by the Government in view of its prior request for delay, and in view of its request to transfer the cases to Kansas in the face of Southern's statement that it was ready for trial.
 
 
 6
 As indicated, the cases were transferred by the Panel to Kansas on March 18, 1971. At this time the other cases previously transferred had been there for some time and there had been pretrial conferences. Also, other defendants had theretofore advised Judge Templar that they desired to take a series of depositions of individuals working at the grain elevators. After the transfer of the Southern cases the Judge scheduled a pretrial conference for May 3, 1971. At this hearing the court required the defendants to designate liaison counsel, which was done.
 
 
 7
 The Government on May 3, 1971, filed a request for admissions on Southern relating to the weight certificates. It is difficult to tell from the wording of the request whether a response to the admissibility or the accuracy of the certificates was sought. But in any event, Southern did not respond and thus under Rule 36 whatever the statement may mean was admitted by the failure to respond. The Government so recognized in its Brief.
 
 
 8
 On May 6, 1971, the trial judge required each defendant in the some fifty cases then pending to file a list of the names of persons whose depositions would be taken, and their location; a list of witnesss to be called at trial, and a list of records it wished the Government to keep. In response to this order Southern advised the court and the Government that it was not going to take any depositions, that it wanted no additional records kept. Southern sent a list of witnesses and a summary of their testimony as it had theretofore done in South Carolina. The record thus shows that Southern complied with the court's order of May 6th. The Government now announced in response to the court's order that it would take no depositions.
 
 
 9
 Thereafter the trial court on August 4, 1971, held a pretrial hearing concerning the failure of some of the defendants in the many cases which had not proceeded with the discovery that they had advised the court they were going to pursue. The court then imposed sanctions on all the defendants, including Southern:
 
 
 10
 "Now, the Court is going to take some drastic action, because I don't believe the carriers intend to take these depositions or make this discovery. After two years I think that is long enough.
 
 
 11
 The Court is going to, as part of this pre-trial, find and determine that the weight certificates and the bills of lading shall be taken as evidence of the weights at origin and at destination. And the difference is going to be determined as the amount of grain lost. Now, there is no use to talk about taking more depositions or producing more witnesses. There has been no response to the Court's repeated demands that this be done. So there isn't any use of prolonging this, and I am not going to.
 
 
 12
 Now, one more thing in that regard, the Court is going to prohibit the Defendants from offering as any evidence in defense anything that would intend to impeach the validity of these documents. That is, I am ordering that there be no impeachment of the veracity or the validity of weight certificates or the bills of lading."
 
 
 13
 This was incorporated in the pretrial order of September 17, 1971, in paragraph 7, as follows:
 
 
 14
 "The Court is of the opinion that there has been a complete failure on the part of the defendant carriers to carry out the discovery they told the Court they were going to do. For this reason the Court finds and determines and orders that the weight certificates and bills of lading in all cases shall be taken as evidence of the weights at origin and destination. The difference between the origin weights and the destination weights of the grain, as reflected on the weight certificates and bills of lading, is determined to be the amount of grain lost in transit. The Court further orders that the defendant carriers are prohibited from offering as any evidence in defense, anything that would tend to impeach the veracity or validity of the weight certificates or bills of lading.
 
 
 15
 The burden of proof is upon the defendant carriers to prove one of the common law defenses available to a common carrier of goods, as provided under the Carmack Amendment to the Interstate Commerce Act and as set forth in Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134 [84 S.Ct. 1142, 12 L.Ed.2d 194] including loss caused by the inherent nature of the grain and loss caused by the act of the shipper. The carrier also has the burden of proving freedom from negligence. If the carriers fail to establish one of the defenses and freedom from negligence, then the determination by the Court that the weight certificates conclusively prove the loss in transit determines the case. . . ."
 
 
 16
 The court recited in this order that it refused to exclude this defendant because it understood that the Panel on Multi-District Litigation had indicated all cases were to be treated the same and because this defendant had not affirmatively responded to a request for admission. Neither of these reasons is valid.
 
 
 17
 Before going further it would be well to examine the nature of the sanctions imposed. It is apparent that under them, if the Government introduced the weight certificate of origin and one of destination, the difference could not be explained by the carriers, and they could not introduce evidence to show the certificates were not correct. This sanction thus removed the principal defense, if not the only real defense, of the carriers according to this record. Only the defenses under Missouri Pacific R.R. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194, remained, that is, losses from acts of shipper and from the inherent nature of the grain. The sanctions went to the basic issue to be tried, and when the cases are transferred back for trial, if they were not imposed on all the defendants, the cases could develop differently.
 
 
 18
 Southern here urges that mandamus is the only suitable remedy to protect it from the blanket action of the District Court in including it in the sanctions against all the defendants under Rule 37 when it had complied with the orders of the court.
 
 
 19
 In its brief, Southern argues that it has never wanted to take depositions of the elevator operators, either before or after the transfer of the cases to Kansas. That instead, its defense was to show that under the weight certificates the same railroad car would show a gain in weight on some trips and a loss on others; thus, demonstrating that the weight certificates were not reliable, and a case based on them could not succeed. Southern, according to its briefs, has here and theretofore argued that considering the total weight of all the trips of its "example" railroad car, there was an increase in weight on arrival over departure of several thousand pounds. Southern says this was to be their defense, that other carriers had different plans of defense including spillage while loading and careless weighing, which entailed discovery.
 
 
 20
 It is apparent that the transfer of these two cases to a single judge for "coordinated and consolidated pretrial proceedings" with many others does not mean that the parties in all the cases must all do the same thing, or all initiate discovery by deposition if they do not wish to do so. Each can make its own determinations in this regard. Thus Southern did not have to take depositions if it did not want to do so to develop its case. It was entitled to pursue a different theory. Nor is it required in the transferred cases that they be tried by deposition, nor are all issues "threshold" issues. The statute contemplates the typical pretrial procedures be accomplished in a coordinated manner to conserve the time of all concerned, and to reduce costs by eliminating the duplication of efforts. The rules are not changed nor are the cases put in a different category for these purposes. Each plaintiff and each defendant is to receive separate consideration, and within the rules is entitled to decide whether he wants to initiate discovery or participate in it under the direction of the judge who is coordinating the pretrial procedures. If he decides to participate in discovery he must, of course, act in accordance with the ground rules set down by the transferee judge.
 
 
 21
 The trial judge in transferred cases has the burden of defining and narrowing the issues as in any pretrial situation, but again this does not mean that all the cases will necessarily have the same issues present, the defenses may be different in some respects, and the plaintiffs or defendants may decide to develop the issues in a different fashion than do others. All the transferred cases cannot necessarily be squeezed into the same mold. There may very well develop limited differences in the facts and the law during the course of the pretrial procedures.
 
 
 22
 Southern here, according to the record before us, has consistently taken the position that it does not wish to take depositions of the elevator operators; it was entitled to take such a position, and the transfer of the cases for coordinated pretrial procedures together with a number of other cases did not change its rights. The Government in its brief seems to assume that Southern was required to participate in the deposition program. The trial court never ordered Southern to do so. It was also entitled to remain silent in the face of requests for admission, if it was prepared to suffer the consequences. Under the rule its admission was automatic on the expiration of the stated time, and no problem need arise. It was clearly incumbent upon Southern to comply with the court's directions as to lists of witnesses, summaries, answers as to whether depositions were to be taken, and similar matters. The record shows that the court did so order and that Southern made timely responses.
 
 
 23
 The delay in the Southern cases which has so far occurred took place for the most part before the cases were transferred, and was caused by the requests of the Government for more time for its discovery, which desires were for the most part abandoned as to these cases after transfer to Kansas.
 
 
 24
 From the record, Southern complied with all requests made by the trial court. In our opinion the remedy of mandamus is a proper one in order that the blanket sanctions imposed against all the defendants will not prevail when the Southern cases are transferred back to their place of origin. This is clearly the best time to separate Southern from the guilty group in the interest of orderly judicial administration, and in order to have the cases ready for trial on transfer back in accord with the purpose of the initial transfers.
 
 
 25
 This court has previously used mandamus in a variety of circumstances, unusual circumstances, where a particular ruling or act of the trial court constituted an abuse of discretion. These cases include Lutes v. United States District Court for Western District of Oklahoma, 306 F.2d 948 (10th Cir.), where the trial court was directed to proceed in an action where it had abstained; in Cessna Aircraft Co. v. Brown, 348 F.2d 689 (10th Cir.), where the trial court had transferred a wrongful death case to another jurisdiction; in Erie Bank v. United States District Court for District of Colorado, 362 F.2d 539 (10th Cir.), concerning review of a nonappealable interlocutory order in an interpleader action; and recently in Bruce v. Bohanon, 436 F.2d 733 (10th Cir.), where the trial court had directed a nonjury trial in a case involving issues triable to the jury. The standards are set forth, and the duties of the Courts of Appeal are described by the Supreme Court in the frequently cited case of La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290; also in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305, and in Ex Parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041. The factual circumstances before us in this application fall within the standards which permit the remedy to be utilized. In our opinion the recitation of the facts hereinabove demonstrates this to be an unusual case and an abuse of discretion by the trial court. As indicated, the possibility that on transfer back this issue might be raised is not a sufficient ground to deny the remedy which would otherwise be available.
 
 
 26
 The sanctions in the pretrial order as applied to this defendant are in error, and the writ shall issue.