463 F.2d 972
 ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Petitioner,
v.
Honorable George C. TEMPLAR, United States District Judge,
Respondent, and United States of America,
Plaintiff-Respondent.
 No. 72-1077.
 United States Court of Appeals,
 Tenth Circuit.
 July 17, 1972.
 
 Daniel M. Dibble, Kansas City, Mo., for petitioner.
 Ronald R. Glancz, Atty., Dept. of Justice (L. Patrick Gray, III, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, with him on the brief), for respondent.
 Before SETH, HOLLOWAY and DOYLE, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This comes before us on a petition for writ of mandamus. The petitioner is a defendant in two cases commenced by the United States on behalf of the Commodity Credit Corporation. It is alleged that the defendant as a rail carrier of grain shipped by the CCC lost a portion of certain designated shipments en route. The cause of action is based on a difference between the weight certificates signed by the loading grain elevators and the weight certificates of the elevator at the destination of the shipment. These cases were started in Nebraska, and transferred to Kansas by the Panel on Multi-District Litigation together with a number of other similar cases pursuant to 28 U.S.C. Sec. 1407(e).
 
 
 2
 This petition is a companion case to the petition filed by Southern Railway Company in this court. Some of the proceedings are similar. See Southern Ry. v. Templar, Tenth Circuit, 463 F.2d 967.
 
 
 3
 Several pretrial orders were entered during the course of the proceedings. The petitioner here seeks relief from the sanctions in paragraph 7 of the pretrial order of September 17, 1971. For details see the Southern Ry. case referred to above. It also seeks to have set aside items 3 and 6 of the pretrial order of December 22, 1971, which relate to the legal relationships between the CCC and the elevator operators.
 
 
 4
 As to the sanctions complained of, some detail is required to be stated to trace the pertinent steps in the coordinated pretrial in order to determine whether the petitioner is a "disobedient party" under Rule 37, Fed.R.Civ.P. The depositions here concerned are those sought to be taken by the defendantpetitioner in the development of its own defense to the suits. Thus we are not concerned with sanctions imposed upon a failure to produce documents or similar and probably more typical situations.
 
 
 5
 The record shows the following facts as to this petitioner:
 
 
 6
 By a pretrial order dated May 6, 1971, the trial court required the petitioner, and many other defendants, to file designations with the court within thirty days. It also required the United States to do likewise within thirty days after the petitioners' designations were filed. The pretrial order of May 6, 1971, further provided that the taking of all depositions shall be completed a reasonable time thereafter. This order required the name and location of the elevator at which the defendants "proposed to take depositions."
 
 
 7
 The Illinois Central responded on June 9, 1971, that it proposed to take depositions at each elevator where the shipments specified in the Government's complaint originated and terminated. The Government filed its designation on August 13, 1971, that it would take no depositions.
 
 
 8
 The pretrial order of May 6, 1971, was followed by correspondence and conversations between counsel for the Illinois Central and the Government relative to the depositions.
 
 
 9
 The trial court on August 4, 1971, held another pretrial conference, and the existing arrangements between the attorneys were explained to the court. The court thereupon expressly stated that these contemplated depositions of the Illinois Central could be taken. The discussion at the pretrial conference was in part as follows:
 
 
 10
 "MR. DIBBLE: I had contemplated taking depositions in the two Illinois Central cases on the week of the 16th of August, and had spoken sometime ago to Mr. Hurley about that.
 
 
 11
 THE COURT: Is there any reason why this shouldn't be done, gentlemen, the Court wants to expedite this as much as he can.
 
 
 12
 MR. DIBBLE: These are at two destination elevators. This will be our total depositions, three at each. And, this is the only further deposition discovery I contemplate. And, as I say, I have tentatively made arrangements of the witnesses to appear at that time.
 
 
 13
 THE COURT: Why will you need it if they concede that your certificates are--
 
 
 14
 MR. DIBBLE: Well, we will also have a defense, Your Honor, that the loss is due to the inherent nature of the grain.
 
 
 15
 THE COURT: I know. Well, you are entitled to present that.
 
 
 16
 MR. DIBBLE: This goes to what happens to grain and what it does.
 
 
 17
 THE COURT: Yes. Well, I believe that these ought to be taken on the 16th unless there is some good reason why they shouldn't be.
 
 
 18
 MR. SWICHAR: There was a question of pushing it back a week.
 
 
 19
 MR. DIBBLE: I had told Mr. Hurley, your Honor, that the week of the 16th was what I wanted. He asked that we defer any final decision until today. But, I do have tentative arrangements made. I didn't know until this morning that the U.S. wanted to change it a week. I don't know how available these witnesses are a week later. I know I am very aware that the Court wants to expedite this.
 
 
 20
 THE COURT: I think, gentlemen, that somebody ought to be able to appear for the Government.
 
 
 21
 MR. SWICHAR: We will take care of it.
 
 
 22
 MR. DIBBLE: May I turn to my other problem?
 
 
 23
 THE COURT: Now, I think probably just to avoid any problem about this, you either ought to serve a formal notice or ask a stipulation so that I will have a record of it."
 
 
 24
 The Illinois Central filed formal notices to take these depositions on August 9, 1971. They were so taken the week of August 16th. The attorneys for the Government participated therein and cross-examined. These depositions were thereafter filed with the Clerk of the Court. These depositions were taken by the Illinois Central to show the practices and methods used in loading and unloading grain at the elevators.
 
 
 25
 At this same pretrial conference of August 4, 1971, the judge ordered as it appears in the transcript of the proceedings as follows:
 
 
 26
 "Now, the Court is going to take some drastic action, because I don't believe the carriers intend to take these depositions or make this discovery. After two years I think that is long enough.
 
 
 27
 "The Court is going to, as part of this pre-trial, find and determine that the weight certificates and the bills of lading shall be taken as evidence of the weights at origin and at destination. And the difference is going to be determined as the amount of grain lost. Now, there is no use to talk about taking more depositions or producing more witnesses. There has been no response to the Court's repeated demands that this be done. So there isn't any use of prolonging this, and I am not going to.
 
 
 28
 "Now, one more thing in that regard, the Court is going to prohibit the Defendants from offering as any evidence in defense anything that would intend to impeach the validity of these documents. That is, I am ordering that there be no impeachment of the veracity or the validity of weight certificates or the bills of lading."
 
 
 29
 This was incorporated in the pretrial order of September 17, 1971, in paragraph 7 as follows:
 
 
 30
 "The Court is of the opinion that there has been a complete failure on the part of the defendant carriers to carry out the discovery they told the Court they were going to do. For this reason the Court finds and determines and orders that the weight certificates and bills of lading in all cases shall be taken as evidence of the weights at origin and destination. The difference between the origin weights and the destination weights of the grain, as reflected on the weight certificates and bills of lading, is determined to be the amount of grain lost in transit. The Court further orders that the defendant carriers are prohibited from offering as any evidence in defense, anything that would tend to impeach the veracity or validity of the weight certificates or bills of lading.
 
 
 31
 "The burden of proof is upon the defendant carriers to prove one of the common law defenses available to a common carrier of goods, as provided under the Carmack Amendment to the Interstate Commerce Act and as set forth in Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, [84 S.Ct. 1142, 12 L.Ed.2d 194] including loss caused by the inherent nature of the grain and loss caused by the act of the shipper. The carrier also has the burden of proving freedom from negligence. If the carriers fail to establish one of the defenses and freedom from negligence, then the determination by the Court that the weight certificates conclusively prove the loss in transit determines the case."
 
 
 32
 The oral statement and the later formal order were, of course, directed without exception to all of the defendants in all of the suits then before the court, including the Illinois Central.
 
 
 33
 Under these facts, the Illinois Central asserts that it was not a "disobedient party" under Rule 37, Fed.R. Civ.P. In our opinion the record shows that petitioner was expressly permitted to take depositions, and apparently was the only one so excepted; the depositions were taken when required; the Government participated fully therein, and they were ultimately filed. Thus at the date of the formal pretrial order on September 21st, the Illinois Central had complied with the orders of the court and thus could not have been a "disobedient party," under Rule 37. Hence the sanctions imposed against all the carriers should not have been imposed against it.
 
 
 34
 We thus must direct that the imposition of the sanctions recited in the pretrial order of September 21, 1971, as imposed under Rule 37 must be set aside as to the Illinois Central Railroad Company.
 
 
 35
 The remedy here sought is a proper one under these circumstances and provides the only presently suitable method for a review of the imposition of the sanctions. See Southern Ry. v. Templar, Tenth Circuit, 463 F.2d 967 (10th Cir.), the companion case.
 
 
 36
 The second portion of the petition of the Illinois Central relates to the pretrial order entered on December 22, 1971, and especially sections 3 and 6 thereof. The trial court therein ruled that the grain elevators were not agents of the CCC, and thus the plaintiff was not responsible for spillage which may have taken place during loading or unloading. This ruling removed one of the defenses sought to be asserted by the carriers, and the Illinois Central asserts that this was an abuse of discretion, and was not a proper pretrial procedure or function in these transferred cases.
 
 
 37
 The agency issue is not one which may properly be raised or tested by mandamus. It meets none of the prerequisites for the issuance of such a writ. It is a typical legal question ruled on by the trial court. It is an important matter for the parties, but other remedies exist to provide an adequate review. The petition is denied as to the agency ruling, but granted as to the sanctions in the pretrial order.