**SAGA INTERNATIONAL, INC.,**
a California corporation,
Plaintiff,

v.

**JOHN D. BRUSH & CO., INC., a New York corporation, Defendant.**

**And Related Counterclaim.**

**No. CV 86–1503 AWT.**

United States District Court,
C.D. California.

Nov. 5, 1997.

Victor Wigman, Wigman, Cohen, Leitner & Myers, P.C., Washington, DC, for John D. Brush & Co., Inc.

Vern Schooley, Fulwider, Patton, Lee & Utecht, LLP, Long Beach, CA, for respondents Morton Stuhlbarg and Stuhlbarg Intern. Sales Co., Inc.

## MEMORANDUM OPINION AND ORDER

TASHIMA, Circuit Judge Sitting by Designation.

This motion for contempt requires the court to answer the following question: Under what circumstances does an injunction entered against a corporation continue to bind the president after he leaves?

### I. BACKGROUND

Defendant and counterclaimant, John D. Brush & Co., Inc. ("Brush"), has filed a motion to hold Morton Stuhlbarg ("Stuhlbarg") and Stuhlbarg International Sales Co., Inc. ("Sisco") (collectively, "respondents"), in civil contempt for violating a permanent stip-

ulated injunction entered pursuant to a 1986 settlement agreement.[1] Brush contends that Stuhlbarg and Sisco are bound by the injunction, and that they have violated it. Stuhlbarg and Sisco deny that they are bound by the injunction and argue, in the alternative, that they have not violated it.

By way of background, Brush has manufactured and sold fire-resistant security storage devices, both metal and plastic, since 1930. In 1986, Brush filed a complaint with the United States International Trade Commission ("ITC") against several respondents, including Saga International, Inc. ("Saga"), alleging patent infringement, misappropriation of trade dress, and related claims. Saga subsequently filed this action seeking a declaration of patent invalidity and non-infringement. Brush counterclaimed, raising the same claims it raised before the ITC.

In June, 1986, Brush and Saga settled both this action and the ITC proceeding. As a part of the settlement, the parties stipulation to the entry of a permanent injunction. The injunction enjoins "Saga, its officers, employees, agents, representatives and others in privity" from:

(a) infringing the patent in issue;

(b) infringing upon Brush's common law trademark for insulated security chests;

(c) misappropriating Brush's trade dress and from marketing insulated security chests in packaging confusingly similar to Brush's;

(d) representing that its insulated security chests originate from or are sponsored by the same source as Brush's; and

(e) from making claims that its insulated security chests protect their contents at high temperatures, unless that claim is certified by Underwriter Laboratories,

Inc., or other organization found to be qualified by the court.

## II. FACTUAL BACKGROUND OF MOTION

According to Brush, several days after the parties executed the settlement agreement, but before the 1986 injunction was entered, Stuhlbarg left his positions as president and director of Saga and founded Sisco, which continued in the insulated security chest business. Until 1997, Sisco made only metal chests, which did not concern Brush. In July, 1997, however, Sisco began to market a plastic security chest, specifically targeted at Brush's major customers.[2] In the course of this marketing effort, Sisco misappropriated Brush's trade dress. Sisco also allegedly claimed that its plastic safes protect their contents at temperatures up to 1550 degrees for a time period up to one-half hour, without meeting the substantiation requirements of the 1986 Order.[3]

Respondents deny that Stuhlbarg was still the president of Saga at the time the agreement was signed. They claim that the settlement agreement was not reduced to final form until after June 27, 1986, and that Stuhlbarg's involvement with Saga terminated on May 21, 1986. The parties are in agreement, however, that Stuhlbarg had terminated his association with Saga by the time the injunction was entered, on August 14, 1986.[4]

## III. DISCUSSION

The threshold question is whether respondents are bound by the injunction. Bearing in mind that the movant has the burden of proving contempt by clear and convincing evidence, *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir.1997), on

---

1. Although the settlement agreement provides for the court's continuing jurisdiction "for the purposes of any contempt proceeding," the court would have continuing jurisdiction to enforce a permanent injunction, regardless of such express reservation by the parties. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir.) ("District courts do, and must, have the authority to punish contemptuous violations of their orders.") (citing 18 U.S.C. § 401; *International Union, UMW v. Bagwell*, 512 U.S. 821, 831, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994)), *cert. denied*, —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995).

2. Plastic safes are considerably less expensive than metal safes.

3. Brush's motion alleges a number of specific instances of violation of the injunction by respondents. In light of the ground on which this motion is disposed of, it is unnecessary to detail those specific allegations.

4. Respondents also deny that they have violated the injunction, assuming it applies to them.

this record, the court finds that Brush has failed to establish a prima facie case that either Stuhlbarg or Sisco is bound by the injunction.

We start with the proposition that an injunction can bind only a party to the action or a privy to a party. *Martin v. Wilks*, 490 U.S. 755, 763–65, 109 S.Ct. 2180, 2185–86, 104 L.Ed.2d 835 (1989) (citing *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934)); *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 34 (1st Cir.1980) (persons beyond the scope of an injunction "cannot be held to have violated it because it does not apply to them. They are free to ignore it.") (emphasis and internal quotation marks omitted). Courts do not enjoin the world at large from committing prohibited acts; they bind only the parties before them. *Id.*, at 34–35 (citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–33 (2d Cir.1930)). The fact that a third party, such as Stuhlbarg, knew of an existing lawsuit but deliberately chose not to intervene does not mean that he is bound by the judgment. *Martin*, 490 U.S. at 763, 109 S.Ct. at 2185 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569–70, 23 L.Ed.2d 129 (1969)). There is no obligation to intervene, and the prior judgment is simply void as to the nonjoined third party. *Id.* at 765, 109 S.Ct. at 2186.

Fed.R.Civ.P. 65(d) defines the outer scope of an injunction. The Rule provides that an injunction *"is binding only upon* the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." *Id.* (emphasis added).

■ Courts have uniformly held that this language is no more than a way of saying that an injunction binds only the party to the suit, as well as those who aid and abet the party's violation of the injunction. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945) ("In essence, it is that defendants may not nullify

a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir.1996). In other words, an officer is bound by an injunction against his corporation *only in his capacity as an officer*. *Alemite*, 42 F.2d at 833 ("the respondent must either abet the defendant, or must be legally identified with him"); *see also Additive Controls*, 96 F.3d at 1395 (holding that Rule 65(d) codifies the holding of *Alemite*). Since courts found aiders and abetters liable for helping a party evade an injunction even before Rule 65(d) existed, *Alemite*, 42 F.2d at 832–33, the language in the Rule about officers, employees, *et al.*, is arguably surplusage. *Cf. id.* at 833 (holding that language in the decree extending it to agents, employees, associates and confederates "adds nothing to the decree.") The Rule merely codified the common law practice of refusing to let a party violate an injunction through intermediaries. *Regal Knitwear*, 324 U.S. at 14, 65 S.Ct. at 481.

■ Therefore, there is no merit to Brush's claim that because Stuhlbarg was an officer at the time of the settlement agreement, he is automatically bound by the injunction. An injunction is not like a tattoo. It does not permanently stick to every person employed by the party enjoined for the rest of his or her life, regardless of what course their lives might later take. Even if that is what Brush and Saga intended by the language in their stipulation, such a broad reading would be void under Rule 65(d). *Merriam*, 639 F.2d at 34. The reference in Rule 65(d) to "officers" means only *current* officers, and Stuhlbarg is no longer an officer of Saga.

■ An injunction applies only to a party, those who aid and abet a party, and those in privity with a party. *Cf. Martin*, 490 U.S. at 762 n. 2, 109 S.Ct. at 2184 n. 2 (recognizing privity as an exception to general rule that non-parties are not bound by prior lawsuits). It is undisputed that neither Stuhlbarg nor Sisco was a named party to this action,[5] nor

---

5. Indeed, Brush attempted to name Stuhlbarg as a party to the 1986 ITC proceeding, but that motion was denied.

are they currently aiding or abetting Saga, which has ceased to exist. Thus, Stuhlbarg and Sisco are bound by the injunction only if one or both is in privity with Saga.

■ Unfortunately, there is no easy definition of privity. Generally speaking, privity exists when a third party's interests are so intertwined with a named party's interests that it is fair under the circumstances to hold the third party bound by the judgment against the named party. *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980). Privity can arise if a third party had control over the litigation conducted by the named party, *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Merriam,* 639 F.2d at 38, if his interests were adequately represented by the named party, *ITT,* 627 F.2d at 1003, or if some other implied or in-fact representation or alignment of interests existed between the parties. *Id.*

■ Conceivably, Stuhlbarg himself could be bound as a privy under the first two notions of privity. *Cf. Merriam,* 639 F.2d at 37–38 (holding ex-officer bound as a privy because of his control over the litigation and the adequate representation of his interests in the prior litigation) This is a purely factual question. The issue is whether Stuhlbarg was so involved in the litigation of this action and the 1986 ITC proceeding that it can fairly be said that he, personally, had his day in court, with the attendant ability to contest liability. *Id.* at 37; *In re Teltronics Serv., Inc.,* 762 F.2d 185, 191 (2d Cir.1985). It is not sufficient that Stuhlbarg was in control of the company in a general way. *Merriam,* 639 F.2d at 37. Rather, the focus is on his control of the litigation itself.

The parties spend a great deal of time arguing over when exactly Stuhlbarg ceased being president of Saga, but this fact is not of primary importance. *Anyone* who was an officer of Saga would be bound by the injunction, *in his capacity as officer,* regardless of whether he was employed by Saga at the time the settlement agreement was made. *Additive Controls,* 96 F.3d at 1395 ("those who act in concert with an enjoined party may be held in contempt, but only for assisting the enjoined party in violating the injunction"). Stuhlbarg cannot be bound by the injunction solely on the basis that he was an officer of Saga at the time the injunction was issued. *Merriam,* 639 F.2d at 37.

The relevant inquiry is whether the person sought to be bound was directly involved in shaping the outcome of the prior litigation such that his interests were adequately represented. *Id.* at 38. *See also Teltronics,* 762 F.2d at 191 ("In light of [the officer's] continuous and active 'non-party' participation and his apparent day-to-day leadership role in the prior litigation, we hold that he was in privity with [the corporation] and is bound by the result in [the corporation's] litigation arising from this cause of action."); *Merriam,* 639 F.2d at 38 (non-officer who exercised control over the litigation may be bound by injunction). Thus, the critical issue is a realistic inquiry into Stuhlbarg's involvement in the litigation and settlement itself. *ITT,* 627 F.2d at 1003 ("Courts are no longer bound by rigid definitions of parties or their privies.").

■ The evidence is insufficient to establish a prima facie case that Stuhlbarg had day-to-day control over the 1986 litigation and settlement. While Brush makes numerous allegations that Stuhlbarg exercised control over the terms of the settlement, the only relevant proof comes from a few pages of Stuhlbarg's deposition. This testimony establishes that Stuhlbarg was familiar, to some extent, with the 1986 litigation, and that he hired the law firm that represented Saga. What this testimony utterly fails to establish is that Stuhlbarg *personally* exercised control over the litigation. Indeed, elsewhere in the deposition, Stuhlbarg states that he exercised no control at all over the case after his ouster on May 21, 1986. If this is true (and there is no evidence to contradict it), it follows that Stuhlbarg was not involved during the final negotiations. And since he had no control over the terms of the stipulated injunction or the settlement agreement, that fact alone would take him out of privity with Saga. In sum, Brush has failed to adduce sufficient proof from which an inference could be drawn that Stuhlbarg exercised sufficient control over the 1986 settlement that it would be fair to hold him personally bound by the injunction.

Another basis for privity would be a showing that Sisco is somehow a successor in interest to Saga. *ITT*, 627 F.2d at 1003 (9th Cir.).[6] In that case, Stuhlbarg would be the officer of a privy and would also be bound. However, Brush has provided no evidence to support a finding of successorship. It is true that after Stuhlbarg left Saga, he founded Sisco. Brush notes that Stuhlbarg also carried with him the expertise and experience he had gained while working for Saga.[7] But this establishes only that Stuhlbarg continued working in the same line of business, an unsurprising choice for someone with so much experience in this area. This fact alone, however, is inadequate to render Sisco a successor in interest. Brush also points out that when Stuhlbarg left Saga, he sold his interest in that company, but it is difficult to say what inference can be drawn from that fact. Even assuming *arguendo* that Stuhlbarg used the money he gained from that sale to help finance Sisco (there is no evidence of this), this act hardly makes Sisco a successor in interest to Saga, which in any event, continued to exist after Stuhlbarg had departed and after Sisco was created.

### IV. CONCLUSION & ORDER

For the reasons stated above, the court finds that the evidence is insufficient to show that either Stuhlbarg or Sisco is bound by the 1986 stipulated injunction. Obviously, all other issues raised by this motion are moot.

IT IS ORDERED that the motion of John D. Brush & Co., Inc., for an order holding Morton Stuhlbarg and Stuhlbarg International Sales Co., Inc., in civil contempt is DENIED.

---

**6.** *Merriam* expresses some doubt about whether a mere successor in interest can be bound by an injunction issued in a prior action. 639 F.2d at 36. However, it ultimately seems to say that a successor can be held liable if it received a transfer of assets from the enjoined party. *Id.*

This approach appears to be in keeping with the flexible approach to privity adopted in *ITT*, 627 F.2d at 1003.

**7.** Only brain surgery would seem to be able to prevent this inevitability.