Angela BERNHARDT, Plaintiff–
Appellant,

v.

LOS ANGELES COUNTY; Lloyd W.
Pellman, individually and in his offi-
cial capacity, Defendants–Appellees.

No. 02–56412.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 20, 2003.

Filed Aug. 5, 2003.

Michael R. Mitchell, Woodland Hills, CA, for the plaintiff-appellant.

Lauren M. Black, Deputy County Counsel, Los Angeles, CA, for the defendants-appellees.

Before BOOCHEVER, REINHARDT and FISHER, Circuit Judges.

FISHER, Circuit Judge.

Angela Bernhardt has sued the County of Los Angeles and its County Counsel, claiming that the County has a policy of settling civil rights cases only for "a lump sum, including all attorney's fees" that violates both an implied federal right under 42 U.S.C. § 1988 and the Supremacy Clause. In summary, Bernhardt contends the County's lump sum settlement policy has made it impossible for her to retain counsel to represent her in litigating her federal claims against the County. This interlocutory appeal is before us following our decision in *Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir.2002), in which we held that Bernhardt had standing to assert her claims in limited respects and remanded her case to the district court for further proceedings. Although the merits of those claims remain pending

before the district court where Bernhardt is appearing pro se, we are now asked to determine whether the district court properly denied Bernhardt a preliminary injunction barring the County's lump sum policy so that she can obtain counsel to represent her in those district court proceedings.

We hold, first, that our prior decision does not foreclose Bernhardt from seeking a preliminary injunction for purposes of securing trial counsel. On the merits, we hold that although the district court did not err in denying Bernhardt a broad preliminary injunction that would have barred the County's use of a lump sum settlement policy in all civil rights cases pending the trial of her case, the district court did err in not considering a narrower injunction limited to Bernhardt's pending case only. Given the serious questions Bernhardt has raised concerning the County's policy, and the balance of hardships that tips strongly in favor of removing an obstacle to her obtaining trial counsel, we hold that, pending her trial, Bernhardt is entitled to a narrow injunction barring the application of the County's alleged policy to her case alone.

## FACTUAL AND PROCEDURAL BACKGROUND

Following an incident in a Santa Monica courtroom in 1998, Angela Bernhardt initiated a 42 U.S.C. § 1983 excessive force case against Los Angeles County law enforcement officials and a Santa Monica College police officer. After she was unable to retain an attorney to represent her in that case (the "excessive force case"),

and while that case was still pending, Bernhardt brought a separate case pro se (the "instant case") against the County of Los Angeles and Lloyd W. Pellman, the County Counsel (collectively, "the County").[1] In the instant case, Bernhardt challenges the County's alleged policy of settling all federal civil rights cases only for "a lump sum, including all attorney's fees." Bernhardt claims that the County's policy has deprived her of her " 'implied federal statutory right under 42 U.S.C. Section 1988' to contract with an attorney for representation in exchange for an assignment to the attorney of the right to seek statutory attorney fees." *Bernhardt,* 279 F.3d at 866. She also alleges that the policy violates the Supremacy Clause by implicitly repealing § 1988.[2] At the time Bernhardt filed the instant case, its premise was that the policy—by requiring the waiver of statutory attorney's fees as a condition of settlement—effectively prevented Bernhardt from retaining a lawyer to represent her in her excessive force case. Thus she sought declaratory relief, damages and a permanent injunction against the County's policy. Although her objective included barring the County's use of its policy generally so that she could obtain trial counsel in her then-pending excessive force case, she did not seek a similar injunction in the instant case where she was also proceeding pro se.

While the instant case against the County was pending, the district court dismissed Bernhardt's underlying excessive force case. *See id.* (discussing the history of Bernhardt's case). She appealed, and another panel of this court dismissed the

---

**1.** Bernhardt's verified second amended complaint states that "[t]his action arises under 42 U.S.C. Section 1983, 42 U.S.C. Section 1988, 28 U.S.C. Section 2201, and the U.S. Constitution," as did her original complaint.

**2.** 42 U.S.C. § 1988(b) reads, in relevant part:

> In any action or proceeding to enforce ... section[ ] 1983, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

appeal. *Id.* at 866–67. The rug had been pulled out from under the instant case: the excessive force case for which Bernhardt was seeking an attorney was over.

In the meantime, the district court dismissed the instant case sua sponte for lack of standing. Bernhardt appealed, and attorney Michael Mitchell represented her for the limited purpose of the appeal.[3] On February 4, 2002, we reversed and remanded for further proceedings, holding that "[t]he allegations made in Bernhardt's complaint established standing." *Id.* at 873. We also held that Bernhardt's claims for prospective relief were moot because the excessive force case was over and her injury was not one "capable of repetition, yet evading review." *Id.* at 871. We concluded, however, that Bernhardt presented a sufficient live controversy because she may be entitled to damages. *Id.* at 873. Although we were skeptical that Bernhardt could prove that she deserved actual damages on the theory that "she would have prevailed in her [excessive force] action if she had been represented by counsel," we accepted her argument that she might be entitled to actual damages because "we examine only the face of her complaint." *Id.* at 872. We also noted that even if Bernhardt could not obtain actual damages, she "still may be entitled to nominal damages on the basis that the County's policy interfered with her implied federal right to obtain counsel in a civil rights action." *Id.*

On remand, Bernhardt again proceeded pro se. Rather than simply begin to litigate her case for actual or nominal damages, Bernhardt filed a motion for a preliminary injunction against the County's policy on the theory that it was now preventing her from retaining an attorney *in the instant case* to pursue her claim for damages on remand.[4] Bernhardt thereby shifted the initial focus of her case on remand from her inability to retain an attorney in her excessive force case to her inability to retain an attorney to press her remaining claims for damages in the instant case. Affidavits from Bernhardt, Mitchell and Robert Alan Seeman, another civil rights attorney who stated that he knew of the County's policy and that over the years it had prevented him from representing many victims of civil rights abuses, supported the motion. The district court denied Bernhardt's injunction motion on July 18, 2002. Nearly four months later, the district court issued findings of fact and conclusions of law in support of its order. It concluded that Bernhardt had no likelihood of success on the merits in the underlying instant case, the balance of hardships did not tip in her favor and the public interest weighed against granting the broadly worded injunction.

Mitchell filed a timely notice of appeal on Bernhardt's behalf. The district court denied Bernhardt's motion to stay further proceedings pending our resolution of this

---

**3.** Mitchell had already brought his own § 1983 suit challenging the County's policy, but that case was dismissed because Mitchell lacked standing. *See Mitchell v. County of Los Angeles*, No. 99–55834, 2000 WL 234844, at *1 (9th Cir. Mar. 1, 2000).

**4.** The proposed injunction read:

IT IS ORDERED, ADJUDGED AND DECREED that defendant County of Los Angeles, its officers, agents, servants, employees, and attorneys, and any attorneys who

contract with the County of Los Angeles to perform legal services, and persons in active concert or participation with them, are enjoined and prohibited from offering, accepting, or entering into any agreement settling civil rights cases that inhibits, interferes with, or prohibits lawyers from applying for attorney's fees under 42 U.S.C. Section 1988 (or any similar statute), including but not limited to "lump sum including all attorney's fees' settlements."

interlocutory appeal. Thereafter, on January 28, 2003, the County moved for judgment on the pleadings. Faced with the prospect that this motion might be granted before we resolved Bernhardt's injunction appeal—which, if successful, could result in her having trial counsel—Mitchell, again representing Bernhardt only on appeal, sought a stay of the district court proceedings, which we granted. We have jurisdiction pursuant to 28 U.S.C. § 1292(a).

## STANDARD OF REVIEW

■ We review the district court's denial of Bernhardt's motion for a preliminary injunction to "determine whether the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *See Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1176 (9th Cir.2000). Such a denial is based on clearly erroneous factual findings "if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999) (internal quotation marks omitted). It is based on an erroneous legal standard if it (a) did not employ the appropriate legal standard governing the decision to issue a preliminary injunction or (b) misapprehended the law with respect to the underlying issues in the litigation. *Id.* The district court's interpretation of the underlying legal principles is subject to de novo review. *See Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 786 (9th Cir.2001).

## DISCUSSION

A. *Reaching the Merits of Bernhardt's Appeal: Law of the Case*

■ Despite the County's suggestion that our prior mootness holding bars Bernhardt's request for a preliminary in-

junction, we will reach the merits of Bernhardt's motion. Her motion is not foreclosed by the law of the case. The law of the case doctrine provides that "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir.1996) (internal quotation marks omitted). The doctrine applies to our "explicit decisions as well as those issues decided by necessary implication." *United States v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186–87 (9th Cir.2001) (internal quotation marks omitted). In our prior opinion, we concluded that the rejection of Bernhardt's appeal of her excessive force case mooted her requested injunction directed at obtaining an attorney to represent her in *that* action. Nonetheless, we held that she might still have a retrospective claim for damages due to her inability to obtain counsel in the first place. Neither we nor the parties addressed what the implications of the County's alleged policy might be for Bernhardt's ability to obtain counsel to pursue her damage claim on remand. The law of the case doctrine does not bar Bernhardt's motion for an injunction or our review of its denial.

B. *The Denial of the Motion on Its Merits*

On remand, Bernhardt—once again ostensibly not represented by counsel, allegedly because of the County's lump sum settlement policy—sought a broad preliminary injunction barring the County from "offering, accepting, or entering into any agreement settling civil rights cases that inhibits, interferes with, or prohibits lawyers from applying for attorney's fees under 42 U.S.C. Section 1988 (or any similar statute), including but not limited to 'lump sum including all attorney's fees' settlements." In opposing the injunction, the County argued as a fallback that:

[I]f the Court is inclined to grant Plaintiff's motion, the scope of the injunction sought is far too broad to serve the interests of justice. It appears that Plaintiff could benefit from a far more limited order prohibiting the County from making a "lump sum, including attorneys fees" offer to Plaintiff.

Bernhardt's pro se motion, however, did not request the district court to consider this more narrow injunction and the court did not do so, limiting its analysis to an assumed injunction that would affect cases beyond Bernhardt's. We conclude that the district court should have considered the narrower option as well.

■ Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints. *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir.2001) (acknowledging that we must construe pro se prisoner motions and pleadings liberally); *see also Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."); *Christensen v. CIR*, 786 F.2d 1382, 1384 (9th Cir.1986) (construing a pro se taxpayer's motion to "place statements in the record" as a motion to amend). This duty is particularly relevant here, where the gravamen of Bernhardt's complaint is that she has to litigate pro se because the County's policy has prevented her from obtaining counsel—in her excessive force case and now in her effort to challenge the County's policy. Whether she can ultimately prevail on the merits of that challenge, it ought not to fail because her ability to marshal legal arguments and evidence with the assistance of counsel has been undermined by the very policy she is challenging.

■ To prevail on her motion for a preliminary injunction, Bernhardt must demonstrate either (a) probable success on the merits combined with the possibility of irreparable injury or (b) that she has raised serious questions going to the merits, and that the balance of hardships tips sharply in her favor. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839–40 (9th Cir.2001). If the public interest may be affected by the proposed injunction, it should also be factored into the analysis. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988). "This Court has explained that these two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to the moving party, the less probability of success must be shown." *Immigrant Assistance Project of Los Angeles County Fed'n of Labor (AFL–CIO) v. INS*, 306 F.3d 842, 873 (9th Cir.2002) (internal quotation marks and citations omitted). As we shall explain, we conclude that Bernhardt merits limited injunctive relief under the second alternative—when the preliminary injunction is narrowed to cover only Bernhardt's instant case in the fashion suggested by the County. That is, the County's alleged policy would not be applied to her in the context of this litigation such that the County would be precluded from offering to settle this case only on terms that would effectively require Bernhardt to waive her counsel's ability to seek attorney's fees under 42 U.S.C. § 1988.

Even though this case is still at the pleading stage, the record from the preliminary injunction proceedings is sufficient for us to evaluate the merits of Bernhardt's entitlement to such a narrowed injunction. Therefore, for the limited purpose of determining whether Bernhardt meets the threshold requirements for a preliminary injunction, we shall address

the seriousness of her claims and the balance of hardships as between Bernhardt and the County.[5] We do not in doing so decide whether she should ultimately prevail on those claims.

### 1. *The Seriousness of the Claim*

■ As discussed above, the crux of Bernhardt's case is that the County's alleged policy of settling civil rights cases for a lump sum including all attorney's fees violates her implied federal right under § 1988 "to contract with an attorney for representation in exchange for an assignment to the attorney of the right to seek statutory attorney's fees."[6] *Bernhardt,* 279 F.3d at 866. Because the County has a policy of requiring civil rights plaintiffs to waive statutory attorney's fees as a condition of settlement, the theory goes, these plaintiffs cannot contract to receive an attorney's services in exchange for transferring the right to seek statutory

attorney's fees to the attorney because this right is rendered unenforceable. As a result, civil rights attorneys have little incentive to take on such cases since their prospects of recovering statutory attorney's fees are low: they would only be able to petition for such fees after prevailing at trial. Although Bernhardt has focused upon the alleged violation of her implied federal right, she also argues that the policy, by barring the application for statutory attorney's fees in all cases that settle, violates the Supremacy Clause by effectively repealing § 1988. Although at this stage of the remand proceedings Bernhardt's case still remains sketchy, she has shown enough to establish that her claim presents serious questions about the nature and effect of the County's settlement policy. *See Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir.1988) (serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction"; they "need not promise

---

**5.** As in our earlier opinion, we do not now resolve "the question of whether Bernhardt properly states a claim pursuant to § 1983 or otherwise states a claim upon which relief can be granted." *Bernhardt,* 279 F.3d at 868 n. 4; *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984) (noting that we review only the preliminary injunction at this stage because this is not a preliminary adjudication on the merits and the case is typically insufficiently developed to allow a reliable resolution of the merits). We leave this for the district court to consider in the first instance.

**6.** We reject the County's argument that Bernhardt cannot properly challenge the policy. The County's theory—which the district court accepted and which the County continues to press on appeal—is that "even if the policy was subject to constitutional challenge, it is not properly challenged by Plaintiff.... Because Plaintiff's underlying case was not meritorious and, therefore, not one which Congress intended to encourage, a policy that would cause her to be unable to hire a lawyer would not violate Section 1988." This theory confuses civil rights cases that are "frivolous, unreasonable, or without foundation," which

Congress did not intend to encourage through § 1988, with civil rights cases that appear potentially meritorious even if the plaintiffs do not ultimately prevail. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (discussing the difference in the Title VII context). Congress *did* intend to encourage plaintiffs to bring the latter, by allowing the potential for parties to recover their attorney's fees should they prevail. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." (quoting H.R.REP. NO. 94–1558, at 1 (1976))). This theory also ignores the holdings of our prior opinion that Bernhardt has demonstrated injury-in-fact, causation and redressability sufficient to establish Article III standing to challenge the policy and that she fell within § 1988's zone of interests such that she satisfies prudential standing requirements. *Bernhardt,* 279 F.3d at 869–71. To the extent that this view factored into the district court's conclusion on the merits, it was an error.

a certainty of success, nor even present a probability of success").

One such question is a factual one, going to the existence and nature of the policy itself. Attached to Bernhardt's Second Amended Complaint is a copy of a March 3, 1998 letter from then-Senior Assistant County Counsel, now County Counsel, Lloyd Pellman that states in part:

> This is to respond to your recent letter to the Supervisors in which you describe an unofficial policy of this office of requiring a plaintiff, as a condition for settling his civil rights suit, to waive statutory attorneys' fees.
>
> . . .
>
> This office does negotiate the settlement of liability litigation for a single sum to compensate the claimant for the injuries claimed, the expenses incurred, and the attorney services rendered to the claimant.
>
> Only in this manner can we evaluate the proposed settlement against the County's possible liability should the matter proceed to trial. Without having such an all inclusive settlement, we would not be in a position to advise either the operating department or the Board of Supervisors of the precise fiscal impact of the settlement.
>
> . . .
>
> We believe our practice of negotiating such all inclusive settlements is not only legal, but satisfies the objective of weighing the County's maximum exposure as established by the settlement against the risks of proceeding with the litigation, just as you, representing the claimant, must do.

The County has argued that this "outdated" letter does not establish the existence of the policy and that, in addition, Bernhardt has failed to show that the alleged policy is applied, without exception, to all civil rights cases the County settles.

There is nothing in the record, however, to refute or qualify the plain language of Pellman's 1998 letter, or to suggest the policy he describes applies only to a subset of cases.

Assuming the County does have a settlement policy requiring the waiver of § 1988 fee applications, serious federal and constitutional questions are presented. Does the policy infringe rights implied by § 1988? Does the policy effectively override the statute in violation of the Supremacy Clause?

a. *Violation of an Implied Federal Right*

Assuming, as the district court appears to have done and the County does not challenge in this appeal, that Bernhardt has an implied federal right under § 1988, *see Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the question is whether the County policy might violate that right. This is a question prompted by the Supreme Court's decision in *Evans v. Jeff D.,* 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). There, the Court addressed a plaintiff class' argument that the district court reviewing their proposed class action settlement under Federal Rule of Civil Procedure 23(e) should have rejected the attorney's fee waiver provision because it was inconsistent with § 1988. *Id.* at 729, 106 S.Ct. 1531. The Court concluded that "it is not necessary to construe the Fees Act [§ 1988] as embodying a general rule prohibiting settlements conditioned on the waiver of fees in order to be faithful to the purposes of that Act." *Id.* at 737–38, 106 S.Ct. 1531. We have recognized that *Evans'* holding that an offer to settle a civil rights class action conditioned on the waiver of fees does not by itself contravene the purposes of § 1988 also applies to individual cases. *See Willard v. City of Los Angeles,* 803 F.2d 526, 527 (9th Cir.1986). But

*Evans* did suggest, even in light of its holding, that § 1988 might prohibit fee waivers in three particular scenarios. As we described them in our prior opinion:

First, § 1988 might bar a governmental unit from implementing a "statute, policy, or practice" precluding the payment of attorney fees in settlements of civil rights cases. [*Evans,* 475 U.S.] at 739–40, 106 S.Ct. 1531. Second, a district court might be required to disapprove a fee waiver that was part of "a vindictive effort to deter attorneys from representing plaintiffs in civil rights suits." *Id.* at 740, 106 S.Ct. 1531. Finally, an action might lie if it were shown that fee waivers have had the effect, "in the aggregate and in the long run," of shrinking "the pool of lawyers willing to represent plaintiffs in such cases," thereby "constricting the effective access to the judicial process for persons with civil rights grievances which the Fees Act was intended to provide." *Id.* at 741 n. 34, 106 S.Ct. 1531 (internal quotation marks omitted).

*Bernhardt,* 279 F.3d at 866. Although *Willard* did not decide whether these exceptions apply to individual cases, we treated them as doing so in our prior opinion and the County does not argue to the contrary. Thus Bernhardt would raise serious questions as to whether her implied federal right under § 1988 was violated if she can show that at least one of these three scenarios is likely at work here. *Cf. Native Village of Venetie IRA Council v. Alaska,* 155 F.3d 1150, 1152 (9th Cir.1998) (a violation of the Indian Child Welfare Act formed the basis for concluding that the villages' implied federal rights under that statute had been breached). The district court concluded that Bernhardt failed to demonstrate a likelihood of success on the merits based on any of the three exceptions suggested in *Evans.* We agree that Bernhardt did

not meet her burden as to the second and third exceptions, but we conclude she has shown enough to raise a serious question about the first: whether the County has adopted a uniform policy or practice that insists "on a fee waiver as a condition of settlement in civil rights litigation ... in conflict with the federal statute authorizing fees for prevailing parties, including those who prevail by way of settlement." *Evans,* 475 U.S. at 739, 106 S.Ct. 1531.

We have no quarrel with the district court's treatment of *Evans'* second and third exceptions. First, Bernhardt concedes that she has offered no proof of "a vindictive effort to deter attorneys from representing plaintiffs in civil rights actions." Second, she has shown that the pool of available civil rights lawyers has shrunk by at least one, but this is not enough to present her case adequately under the third *Evans* exception. *Compare id.* at 743 n. 34, 106 S.Ct. 1531 ("We believe, however, that as a practical matter the likelihood of this circumstance[creating exception three] is remote.").

The district court's treatment of *Evans'* first exception is a different matter. Although it correctly quoted the relevant language from *Evans,* the court did not clearly address the application of this exception to Bernhardt's case. It simply concluded that Bernhardt had failed to show a likelihood of success because she did not show that her case fit within *Evans'* second or third exceptions. To the extent that the district court did address whether the first exception applies, it only said that "the evidence submitted by Plaintiff does not establish either the scope or extent of such a policy." As we have discussed above, Bernhardt has submitted enough evidence to raise serious questions as to the existence of the policy; at this stage she need not establish its precise bounds. Accordingly, we must consider

whether the County's alleged lump sum policy might fall into *Evans'* first exception because it is a blanket fee waiver that "preclud[es] the payment of attorney's fees in settlements of civil rights cases." *Bernhardt*, 279 F.3d at 866.

In a strict sense this policy does not appear to *preclude* the payment of fees, at least insofar as the County may include an estimated allocation of fees as part of the lump sum settlement. On the other hand, the lump sum policy does preclude the payment of *statutory* attorney's fees as discussed in *Evans*, because after reaching a settlement with the County the plaintiff is no longer able to petition the court for an independent award of fees. In *Willard*, the plaintiffs "settled their civil rights action against the City of Long Beach in exchange for the sum of $6,000, which included all attorney's fees potentially recoverable under section 1988." 803 F.2d at 527. We treated this settlement as containing a "condition waiving attorney's fees," even though theoretically the lump sum included the fees, and we said that the plaintiffs would have needed to show a citywide "statute, policy, or practice requiring waiver of fees as a condition of settlement" to trigger *Evans'* concerns. *Id.* Bernhardt has made just such a showing for purposes of preliminary injunction analysis. Guided by *Willard*, we consider a lump sum settlement offer as the kind of fee preclusion that—if embodied in a uniform policy or practice—might come within *Evans'* first suggested exception. Because the evidence before us suggests that the County may have such a blanket settlement policy, Bernhardt has at least a fair chance of showing that her case fits into *Evans'* first exception.

b. *Violation of the Supremacy Clause*

■ Bernhardt has also raised a serious question going to the merits of a Suprema-

cy Clause claim that does not depend upon the existence of an implied federal right under § 1988. *See Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir.1994) ("Even in the absence of an explicit statutory provision establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief against state action on the basis of federal preemption."); *see also Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107–08, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (acknowledging that preemption claims may be asserted outside of § 1983). "The Supremacy Clause of the Constitution, Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law." *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 851 (9th Cir.2002) (internal quotation marks omitted). Under the Supremacy Clause, federal law can displace local law or regulation through express preemption, field preemption or conflict preemption. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir.2003). Express preemption results when Congress enacts a clear statutory command that local law is displaced. *Id.* Field preemption occurs when federal regulation of an area is so comprehensive that we must infer that Congress left no room for local regulation. *Id.* at 1136. Finally, "[c]onflict preemption is found where 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (citations omitted).

■ Bernhardt argues that the County runs afoul of the Supremacy Clause because its policy effectively repeals § 1988. We interpret her to be invoking the "obstruction strand of *conflict preemption*" in which "an aberrant or hostile state rule is preempted to the extent it actually inter-

feres with the methods by which the federal statute was designed to reach [its] goal." *Ting,* 319 F.3d at 1137 (internal quotation marks omitted). In determining whether a local regulation creates such an interference, courts must " 'consider the relationship between [local] and federal laws as they are interpreted and applied, not merely as they are written.' " *Id.* (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)).

Bernhardt has at least a fair chance of success on a free-standing Supremacy Clause challenge based on conflict preemption for reasons similar to those we have discussed in connection with the applicability of *Evans'* first exception. This is unsurprising given that the Court in *Evans,* in discussing its first exception, invoked Supremacy Clause concerns. *See Evans,* 475 U.S. at 739–40, 106 S.Ct. 1531 (respondents "have not offered to prove that petitioners' tactics in this case merely implemented a routine state policy designed to frustrate the objectives of the Fees Act"). Section 1988 was enacted to " 'attract competent counsel to represent citizens deprived of their civil rights,' " *Bernhardt* 279 F.3d at 870 (quoting *Evans,* 475 U.S. at 731, 106 S.Ct. 1531), and "to encourage compliance with and enforcement of the civil rights laws," *Dennis v. Chang,* 611 F.2d 1302, 1306 (9th Cir.1980). Although *Evans* said that it was "not necessary to construe the Fees Act [§ 1988] as embodying a general rule prohibiting settlements conditioned on the waiver of fees in order to be faithful to the purposes of that Act," 475 U.S. at 737–38, 106 S.Ct. 1531, the Court made clear a blanket policy or practice (just like a state statute) precluding § 1988 fees would most likely violate the purposes underlying § 1988. Accordingly, a County policy that requires the waiver of statutory attorney's fees in all civil rights cases—if indeed such a policy exists—may unduly interfere with the method—i.e., the availability of statutory attorney's fees—that Congress has chosen to encourage representation of individuals whose civil rights have been violated, and thereby violate the Supremacy Clause. For this reason, and bearing in mind that "whether a state regulation unavoidably conflicts with national interests is an issue incapable of resolution in the abstract," *Ting,* 319 F.3d at 1137 (quoting *Time Warner Entm't Co. v. FCC,* 56 F.3d 151, 195 (D.C.Cir.1995)), we conclude that this claim also presents serious questions that weigh in favor of an injunction.

## 2. *The Balance of Hardships*

■ Although Bernhardt has raised serious questions going to the merits of her case, to be entitled to an injunction she still must show that the balance of hardships tips sharply in her favor. *See Stuhlbarg,* 240 F.3d at 839–40. We agree with the district court that when Bernhardt's hardships are balanced against those that would be imposed on the County by a broad injunction extending to cases beyond this one, the balance does not tip in Bernhardt's favor. The County's affidavit reflecting that nearly 250 § 1983 cases were pending against it and its argument that "[a] limitation on the County's ability to settle these lawsuits would undoubtedly have a significant effect on the County's legal representation" support the district court's conclusion. Were this the only inquiry that should have been made, we would hold that the district court did not abuse its discretion. But when the hardships are rebalanced based upon an injunction more narrowly drawn than the only option the district court considered, the balance shifts appreciably in favor of Bernhardt.

Bernhardt has shown that she will likely suffer hardship if an injunction is not issued before she proceeds further with her

case before the district court.[7] She would have to litigate her case pro se on remand without the formal assistance of an attorney already familiar with the case who has stated he would represent her but for the County's alleged policy. Bernhardt reasonably predicts that without an attorney she will lose this case and any damages and declaratory relief to which she may be entitled. Generally speaking economic hardship alone is not enough to meet Bernhardt's burden, *see Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), but there is more than simple economic hardship at stake here. Bernhardt's inability to proceed with counsel to pursue the serious Supremacy Clause and § 1988 issues discussed above is allegedly attributable to the very policy she is challenging. If the County's policy is in fact undermining civil rights plaintiffs' access to counsel, the harm affects not only such a plaintiff's pocketbook but the judicial process itself.

On the other side of the scale, the hardship to the County resulting from a narrow injunction preventing the County from applying its alleged policy to Bernhardt's case alone would be minimal, if any. There is no indication that the hardships the County identified relating to the approximately 250 pending § 1983 cases would come into play were the injunction narrowed to bar the County from invoking its policy only with respect to Bernhardt. Perhaps the County might suffer *some* hardship if it were interested in settling Bernhardt's case, but was unable to insist on a fixed dollar figure as its bottom line because Bernhardt might still be able to seek statutory attorney's fees of an indeterminate amount. Any burden created by this uncertainty, however, does not outweigh Bernhardt's hardship. Instead, the balance of hardships tips sharply in Bernhardt's favor.

### 3. *The Public Interest*

Finally, had the district court been evaluating an injunction limited to Bernhardt, the public interest should have been at most a neutral factor in the analysis rather than one that favored denying the preliminary injunction. We look at this factor separately, not simply as part of the balancing of hardships. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir.2002). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *Id.* It embodies the Supreme Court's di-

7. At this stage we are not persuaded by the County's argument—which the district court did not adopt—that Bernhardt suffers no cognizable harm or hardship because she could avoid this entire situation through self-help. The County argues that Bernhardt is not entitled to an injunction because it is not the alleged policy but instead Bernhardt's own unwillingness to enter into an agreement with Mitchell limiting her ability to accept a settlement predicated on the waiver of attorney's fees that has rendered her unable to retain counsel. It is true that "there is nothing in [§ 1988] to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win" and that "as far as § 1988 is concerned, it is the party's right to waive, settle, or negotiate [the] eligibility [for fees]."

*Venegas v. Mitchell*, 495 U.S. 82, 86–88, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

But Bernhardt raises a serious question whether under California law and the rules of professional conduct such an agreement would be valid or enforceable. *See, e.g.,* Cal. Bus. & Prof. § 6128 ("Every attorney is guilty of a misdemeanor who ... willfully delays his client's suit with a view to his own gain."); Vapnek et al., California Practice Guide: Professional Responsibility (The Rutter Group 2002) ¶ 5:1164 ("An attorney has an ethical obligation not to prejudice the client's cause to further his or her own gain. Any tactics to secure fee payment that would interfere with effective representation are prohibited." (citing Cal. Bus. & Prof. § 6128(b); Cal. Prof'l Conduct R. 3–110)).

rection that "in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

The district court, in considering only the broad injunction, concluded that the public interest is served by the County's policy because the policy promotes settlement. Settlement of disputes is indeed a laudable objective; but, as Bernhardt correctly points out, the district court did not address the competing public interest in attracting competent counsel to represent victims of civil rights abuse, an interest that may be adversely affected by the policy. Despite this omission, were we considering the broad injunction alone we would agree that on this record, Bernhardt has not met her burden of demonstrating that the public interest favored such a sweeping injunction. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (the party seeking an injunction must carry its burden of persuasion by a "clear showing").

When we consider the narrower injunction, however, we conclude that the competing public interest concerns do not tip the balance either way. An injunction preventing the County's application of the policy to Bernhardt's case alone would not affect non-parties or interfere with the County's settlement of other civil rights cases. *Cf. Sammartano*, 303 F.3d at 974 (observing that courts have "consistently recognized the significant public interest in upholding First Amendment principles" bearing on third parties). The public interest is thus a neutral factor, weighing neither for nor against a more narrow injunction. *See Caribbean Marine*, 844 F.2d at 674 ("the district court must consider the public interest as a factor ...

*when the public interest may be affected*") (emphasis added); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.1980) (noting that the "advancement of the public interest" is a relevant factor "in certain cases").

## CONCLUSION

In sum, we conclude that Bernhardt is entitled to a narrow injunction because she has succeeded in raising serious questions about the County's settlement policy, the balance of hardships of a limited injunction tips sharply in her favor and the public interest does not change the calculus. Accordingly, we reverse the district court's denial of Bernhardt's motion for a preliminary injunction and remand with instructions that the district court enter a preliminary injunction limited to barring the County from offering to settle Bernhardt's civil rights case No. CV 99–10121–JSL in a way that inhibits, interferes with, or prohibits her counsel from applying for attorney's fees under 42 U.S.C. § 1988, including but not limited to "lump sum including all attorney's fees" settlements. *Cf. Idaho Sporting Cong., Inc. v. Alexander*, 222 F.3d 562, 569 (9th Cir.2000) (remanding with instructions to grant the injunction pending a final determination on the merits).

The panel shall retain jurisdiction over any further appeals in this case.

**REVERSED and REMANDED.**